Leo W. George, Claimant, *v.* State of New York, Defendant.
(Claim No. 31796.)

Court of Claims, April 23, 1954.

*Harry L. Brown* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Lawrence H. Wagner* of counsel), for defendant.

Major, J. This claim was filed to recover damages for the permanent appropriation of land by the State of New York for highway purposes, pursuant to section 30 of the Highway Law, for the project known as Persons Corners–Bennington State Highway, Part 1. Actually, all the claimant requests is payment for an easement which claimant claims to have had in premises already appropriated and paid for by the State.

On November 21, 1950, the claimant herein, his wife, and Nettie K. George, his mother, entered into an agreement with the Superintendent of Public Works for the People of the State of New

York, adjusting and settling the damages and other matters of difference between these parties and the State of New York. Pursuant to said agreement of adjustment, the State of New York appropriated and became the owner in fee of two parcels of land identified on Map No. 10 as Parcel No. 13, and on Map. No. 13 as Parcel No. 16. In connection with the same project, the State appropriated an additional parcel of land from Anthony A. Helwig, Herman A. Ast and their wives, which will hereafter be referred to as the "Helwig" property, and is described on Map No. 11 as Parcel No. 14. The parcel purchased from Helwig, et al., lies between the two parcels appropriated and purchased from the claimant.

The claimant bases his claim upon the fact that for forty years or more, he and his predecessors maintained a well and more recently a well house made of concrete and wood upon the Helwig property, just west of the New York State highway, the water from which was piped to his home and other buildings; that the State failed to take cognizance of his interest and rights in this well; that this well was supplied by percolating waters and when the State constructed the new highway, such percolating waters were cut off and no longer supplied the well to his damage; that he had an easement across the Helwig property which was a part of his farm and which was not cut off by the appropriation.

The State contends that the well in question is not upon the land appropriated from Helwig, et al.; that it had a right to construct its highway on the land appropriated from Helwig, et al.; and that there is no liability to the claimant because of damage from loss of percolating waters; that the agreement of adjustment entered into between the claimant and others with the State fully and finally settled all claims for compensation and damages and the settlement included the easement, if any, of the claimant herein.

The court viewed the premises in company with the claimant and the attorneys for the respective parties, and found the well house in question just outside of the area appropriated and west of the new State highway on the land of Helwig, et al. It is a structure made of concrete with walls one foot thick, and which is about nine and one half feet deep, and is seven feet square on the inside. That the claimant secured his water from this well which was supplied by percolating waters which flowed westerly downhill by gravity, through part of the Helwig property toward the well.

After the excavation operations and the construction of the new State highway, the well dried up and failed to furnish water for the claimant's farm. No proof was presented as to what caused the well to dry up, except by implication that it resulted from the interference by the State construction. The claimant is now securing water from a new well located and constructed by the State, with claimant's assistance, on the easterly side of the new State highway and piped across the road to the pipes leading to claimant's farm. The new well furnishes water to the claimant and was constructed to take the place of the old one.

In the absence of evidence showing unreasonable and unlawful interference with percolating waters, the owner's dominion over his own land must be recognized. The State acquired the Helwig property for the purpose of building a State highway thereon, which is a lawful, reasonable and public purpose. The State did not divert the flow of an open running stream, nor did it intentionally cause water from such lands to be used in any other territory. The claimant merely alleges that the State in constructing the new highway disturbed the water supply as it seeped through the ground and prevented it from reaching the well.

The State took the fee to the property, and before commencing construction was the owner thereof and had a right to use the same for any lawful purpose and, in doing so, was fully within its right to intercept percolations. (*Trustees of Vil. of Delhi* v. *Youmans,* 45 N. Y. 362; *Pixley* v. *Clark,* 35 N. Y. 520; *Dillon* v. *Acme Oil Co.,* 49 Hun 565; *Vanderbilt* v. *State of New York,* 159 Misc. 586.)

The fact that percolating waters on adjoining land would naturally seep or gravitate in the general direction of claimant's lands or his well for over forty years, in the absence of proof of prior knowledge of a defined underground stream, does not establish an easement on such adjoining lands for the benefit of the claimant. Therefore, the State made no appropriation of claimant's property or rights, except that which has been fully compromised and settled. The claim must, therefore, be dismissed.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.