Foster, P. J.
The State appeals from three orders of the Court of Claims which denied in each instance its motion to dismiss the claim of each respondent on the ground that the same did not state facts sufficient to constitute a cause of action. The *679 claims are for certain relocation costs incurred by respondents in connection with a grade crossing elimination project. The project was accomplished by depressing the railroad tracks of the Long Island Bail Boad Company, which ran at grade along Atlantic Avenue in the borough of Brooklyn to 124th Street in the borough of Queens, in the city of New York, into a subway tunnel, and constructing above them an improved highway on Atlantic Avenue. This elimination improvement was done under the approval of and by order of the Transit Commission, since succeeded by the Public Service Commission (L. 1943, ch. 170). In the performance of the work an open cut was made along the railroad right of way, and during the course of the work temporary tracks were installed along Atlantic Avenue to the north and south of the railroad right of way, so that the railroad could continue to operate. Stations and emergency exits were also built by the railroad company in connection with the subway tunnel. The installation of temporary tracks and the erection of stations and emergency exits conflicted with the location of respondents’ utility facilities in the avenue and their relocation was required and directed by the Transit Commission.
Bespondents’ claims were filed pursuant to section 7 of chapter 677 of the Laws of 1928, commonly known as the New York City Grade Crossing Elimination Act, as amended. This section reads in part: “ If the work of such elimination causes damage to property not acquired as above provided, the state shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law.” (Emphasis supplied.)
The issue posed upon appeal is whether respondents’ claims plead facts which indicate a liability existing at common law and irrespective of the statute. And this in turn depends upon whether on the facts as alleged the relocation of respondents’ utility structures was compelled in the exercise of the State’s police power, or whether the change was required in behalf of and for the sole benefit of the Long Island Bail Boad Company, another public service corporation.
A considerable background of legislative and constitutional authority for the elimination work has been cited at some length. We do not deem it necessary to discuss these matters in great detail. No one has challenged the power of the former Transit Commission, or its successor, the Public Service Commission, to approve of the elimination project out of which the claims under consideration arose. It may be pertinent to note, *680 however, that prior to the constitutional amendment of 1938 incidental improvements were not included within the ambit of grade crossing eliminations. The amendment to section 14 of article VII' of the State Constitution (eff. January 1, 1939) authorized among other things a segregation of certain moneys for the elimination of grade crossings ‘1 and incidental improvements in the city of New York ”. (Emphasis supplied.) The Legislature then enacted an enabling act (L. 1939, ch. 289) which provided that grade crossing ehminations constructed after January 1, 1939, should include incidental improvements, and required the State to pay in the first instance all ehmination expenses. It also empowered the Transit Commission to determine what improvements were necessary or desirable because of the elimination and reasonably included in the plans for such elimination.
In the case of the Atlantic Avenue project (Case No. 2711) the order of the Transit Commission, dated June 26, 1939, amended its original order of October 7, 1938, to determine that the depression of the railroad tracks on Atlantic Avenue and the construction of the highway above were incidental improvements rendered necessary or desirable because of the elimination‘and reasonably included in the engineering plans therefor. Thus the final and larger plan approved by the Transit Commission not only provided for the elimination of all crossings or lengthwise at grade, but it also provided for the paving of Atlantic Avenue for its full width.
The orders of the Transit Commission in this connection, directing and fixing the cost of elimination and identifying the cost of incidental improvements, were attacked in the courts but their validity was sustained (Matter of Long Island R. R. Co. [Reimer], 259 App. Div. 919, affd. 285 N. Y. 730). Although in this case no opinion was written in either appellate court, we think it may be fairly implied from the decisions that the Constitution and the enabling act of 1939 gave the Transit Commission not only authority to direct the depression of the railroad tracks into a subway tunnel, even though the cost was greater than if grade crossing eliminations had been made separately, but also authority to charge the State with the improvement of a highway where such improvement was found to be reasonably incidental to the entire grade crossing elimination project.
In the light of these preliminary statements we reach the question of whether claimants have pleaded valid causes of action against the State because of liability to them already *681 existing in law for which the State would be liable in the first instance. Claimants assert that such liability already existed on the theory that they were required to relocate their equipment merely to accommodate the railroad company, and that the installation of temporary tracks outside of the railroad right of way, and the erection of stations and emergency exits in connection with the subway tunnel, in conflict with the location of their service structures, was a “ trespass without mitigation ’ ’, for which the railroad company would be directly liable to them at common law were it not for the statute making the State liable in the first instance.
The court below held with the claimants, and generally to the effect that the building of temporary tracks and the construction of emergency exits and stations in the locations already occupied by claimants were acts severable from the elimination of grade crossings. Our view is different. We think the whole project, including incidental improvements and the temporary relocation of the railroad company’s tracks, was a governmental activity for the benefit of all the people. While the claimants do not specify with particularity under whose direction and by what authority the temporary tracks of the railroad company were installed, we think it must be presumed that they were laid pursuant to the provisions of subdivision 17 of section 6 of chapter 677 of the Laws of 1928 (as added by L. 1929, ch. 681, § 5), which provides generally that any railroad company during the progress of a change of grade of its railroad may maintain temporary structures for its continued operation, “ all of which shall be done only under the approval, direction and sanction of the transit commission as part of the elimination work ”. This statutory and permissive provision adds additional force to our conclusion that the laying of temporary tracks was a nonseverable part of the elimination project under the direction and control of a governmental agency. And of course the erection of stations and emergency exits in connection with the subway tunnel was an inevitable result of depressing the railroad tracks into a subway.
The location of respondent’s utility equipment above and below the surface of Atlantic Avenue was subject to public necessity and convenience, and they acquired no rights superior to the public interest. The rule was stated succinctly in Transit Comm. v. Long Island R. R. Co. (253 N. Y. 345, 351) as follows: “ Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and *682 security require, at its own cost and charge.” The only departure from this rule is where the change required is made in behalf of another public service corporation or in behalf of a municipality exercising a proprietory instead of a governmental function. Most of the cases cited by respondents to support their claims were distinguished in this case.
In the claims before us it is nowhere charged that any municipality was exercising a proprietory instead of a governmental function. And there is no clear allegation in the claims presented, nor do we think it may be fairly inferred from their language that the relocation of respondents’ utility facilities was made solely for the benefit of the railroad company. But if such an allegation were there it would be a conclusion at best, and not a statement of fact.
In the case very heavily relied upon by respondents (City of New York v. New York Tel. Co., 278 N. Y. 9) it was found that the City of New York was acting in a proprietory capacity as owner and operator of a subway under the provisions of the Rapid Transit Act, and hence it could not charge the utility there involved with the cost of relocating its facilities. This case obviously has little or no application to the facts pleaded here. More pertinent is the case of Coffey v. State of New York (291 N. Y. 494). There, in the progress of a grade crossing elimination in the city of Elmira, detour railroad tracks were laid which occasioned some damage to an abutting owner. The court said (p. 497): “ Although the detour tracks were laid for the use of, and immediately for the benefit of, the railroad, it cannot be doubted that this track relocation was a part of the public project for the elimination of the crossing at grade.” Consequential damages caused by the temporary detour tracks were denied the abutting owner. In our opinion the rights of an abutting owner are at least equal, if not superior, to those of a utility which has a franchise, subject to public necessity and convenience, to locate its services in a public street.
In view of the foregoing we are unable to agree with the court below that the facts as pleaded in the claims before us indicate an existing or common-law liability within the meaning of section 7 of chapter 677 of the Laws of 1928. We are not unmindful that we are passing only upon claims, but no question of fact has been suggested by counsel for any party, and the issues on this consolidated appeal have been argued solely as matters of law.
*683 The orders should be reversed and the claims dismissed, with $50 costs and disbursements as of one appeal.
Heffernan, Brewster, Bergan and Coon, JJ., concur.
Orders reversed, on the law and facts, and the claims dismissed, with $50 costs and disbursements as of one appeal.